2025 IL App (1st) 230818

No. 1-23-0818

Opinion filed August 12, 2025

Second Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 06672 |
| | ) | |
| ANTHONY RICH, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE VAN TINE delivered the judgment of the court, with opinion.
Justices McBride and Howse concurred in the judgment and opinion.

**OPINION**

¶ 1    Following trial, a jury found defendant guilty of being an armed habitual criminal (AHC),

and the trial court sentenced him to 15 years in prison. On appeal, defendant contends that (1) trial

counsel rendered ineffective assistance by failing to file a motion to suppress evidence as the

product of his unlawful arrest, (2) his sentence is excessive, and (3) Illinois's AHC and unlawful

use of a weapon by a felon (UUWF) statutes are unconstitutional. For the following reasons, we

affirm.

¶ 2                                    I. BACKGROUND

¶ 3    The State proceeded to a jury trial on one count of AHC (720 ILCS 5/24-1.7(a) (West 2018)) premised on defendant possessing a firearm after being convicted of UUWF (720 ILCS 5/24-1.1(a) (West 2010)) in a 2011 case and vehicular hijacking (720 ILCS 5/18-3(a) (West 2014)) in a 2014 case.

¶ 4    Section 24-1.7(a) of the Criminal Code of 2012 is now titled "[u]nlawful possession of a firearm by a repeat felony offender" (720 ILCS 5/24-1.7(a) (West 2024)), but the State charged defendant under the previous version titled "[a]rmed habitual criminal," so that is the term we will use.

¶ 5                                      A. Trial

¶ 6    Chicago police detective Dennis Lanning testified that, at approximately 12:30 p.m. on April 19, 2018, he was driving an unmarked police vehicle northbound on South Morgan Street and stopped at the intersection with West 67th Street, also known as Marquette Road. Lanning was a gang enforcement officer at the time. Officer Daniel Passarelli was in the front passenger seat and Officer Jeffrey Troglia was in the rear passenger seat. All three officers were wearing plain clothes with vests displaying their badges and name tags.

¶ 7    Lanning saw three individuals, including defendant, "walking northbound in the middle of" 67th Street. When another vehicle approached the individuals, they did not move, and the vehicle had to drive around them. Lanning pulled up next to the three individuals, had "a short conversation with [them] regarding walking in the middle of the street," and "decided that an investigatory stop was needed." When Lanning began to exit his police vehicle, defendant, whom Lanning identified in court, "immediately ran southbound holding his side, which had a bulge in it along the waistline." Lanning "assum[ed] that the defendant was concealing a weapon."

Passarelli exited the police vehicle and chased after defendant while Troglia detained the other two individuals in the street.

¶ 8 Lanning returned to the police vehicle and followed defendant and Passarelli. He saw defendant and Passarelli cross 67th Street, then enter a gangway "within the first five houses on the west side of Morgan." Lanning drove into the alley behind those houses and saw Passarelli in a backyard, pointing. Lanning then saw defendant in a gangway to the left of the police vehicle. Defendant made eye contact with Lanning and "threw what looked like a handgun to the ground in the gangway." Defendant threw the firearm from the right side of his body, which was facing away from Lanning. Defendant ran toward Lanning, then north through backyards, and Lanning lost sight of him. Lanning testified that this incident occurred in a "high crime area."

¶ 9 Lanning drove around to South Morgan Street in front of the houses and exited his vehicle as other officers arrived on scene. Officer Reinaldo Rodriguez recovered the firearm, and other officers spoke to "community members" who were standing in front of one of the houses on Morgan Street. Lanning and a gang enforcement team then entered the vacant second-floor apartment of 6714 South Morgan Street, found defendant in a rear bedroom, and arrested him. Defendant told the arresting officers, "I just ran from y'all because I am on parole and I knew that apartment was vacant." Lanning's police report documented that defendant had scratches on his hand. Rodriguez gave Lanning the firearm he recovered, and Lanning inventoried it. In court, Lanning identified the firearm and its ammunition, and the State moved them into evidence.

¶ 10 Lanning also identified a photograph depicting two-flat apartment buildings at 6716 and 6714 South Morgan Street. The gangway for 6714 South Morgan Street was on the north side of

the building and the gangway for 6716 was on the south side of that building. The front door of 6716 South Morgan Street was boarded up with plywood.

¶ 11   Rodriguez testified that he responded to a radio call at 67th and Morgan Streets between 12:30 and 12:40 p.m. on April 19, 2018. The radio call stated that the suspect "had his hand on his waistband," which usually "means that they are possibly carrying a gun." Approximately three minutes after arriving at the scene, Rodriguez found a silver and black firearm in the gangway next to an apartment building at 6716 South Morgan Street. While wearing gloves, Rodriguez secured the firearm, removed its magazine, and retrieved a round from the chamber. Rodriguez gave the firearm to Lanning. In court, Rodriguez identified the firearm he recovered.

¶ 12   Rodriguez also identified a video recording from his body-worn camera, which the State moved into evidence. The video depicts Rodriguez exiting his police vehicle in an alley and running into the backyard of a two-flat apartment building. Rodriguez runs to the front yard, walks down the sidewalk, and enters the neighboring building's gangway. In the gangway, he finds a black handgun on the ground. Rodriguez puts on gloves, recovers the firearm, and removes its magazine and a round from the chamber.

¶ 13   Sergeant Robert Franks was qualified as an expert in the field of latent print preservation and recovery. He examined the firearm, magazine, and ammunition recovered in this case and found no fingerprints on any of those items.

¶ 14   The parties stipulated that defendant had been convicted of two qualifying felony offenses, and the State rested.

¶ 15   Defendant called Chicago police officer Omar Moreno, who testified that he was Rodriguez's partner. Moreno identified a video recording from his body-worn camera, which

defendant moved into evidence. The video depicts Moreno entering the backyard of an apartment building and looking in the neighboring building's window. Moreno then searches the empty basement of that building, which he testified was next door to the building in which defendant was arrested.

¶ 16    The parties stipulated that two other video recordings from body-worn cameras accurately depicted events at 6716 South Morgan Street at approximately 12:40 p.m. on April 19, 2018. Defendant moved both videos into evidence. The first video depicts a group of officers standing in front of two-flat apartment buildings. The second video depicts an officer arriving at the scene on South Morgan Street, entering a gangway, and walking into a backyard. The officer stands in the backyard, then returns to the front of the apartment buildings. In closing, defendant argued that these videos suggested that no officer actually saw defendant drop a firearm and that Rodriguez coincidentally found a firearm in the gangway even though police were not looking for one.

¶ 17    The jury found defendant guilty of being an AHC.

¶ 18                              B. Posttrial Motions and Sentencing

¶ 19    At a posttrial hearing, defendant raised claims of ineffective assistance of counsel, so the trial court held a hearing pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984). Defendant claimed that trial counsel failed to (1) raise double jeopardy issues regarding a federal prosecution, (2) have the firearm tested for DNA, (3) subpoena Passarelli for trial, (4) hire an expert on eyewitness identifications, (5) object to the admission of defendant's statements to police or file a motion to exclude those statements, (6) object to the State mentioning that defendant was on parole at the time of this arrest, and (7) impeach Lanning. The court found no ineffective assistance by trial counsel.

¶ 20    Defendant then filed a motion for a new trial. Relevant here, defendant's motion argued that trial counsel rendered ineffective assistance by failing to file a motion to suppress evidence based on violations of defendant's fourth amendment rights. The trial court denied defendant's motion for a new trial.

¶ 21    At the sentencing hearing, the trial court stated that it had considered defendant's presentence investigation report (PSI). The PSI reflects that, in 2016, defendant was convicted of vehicular hijacking, unlawful vehicular invasion, and robbery in a 2014 case. He was sentenced to six years in prison and was on parole in that case at the time of his arrest in this case. In 2014, defendant was convicted of theft and was sentenced to two years in prison. In 2011, defendant was convicted of UUWF and was sentenced to three years in prison. In 2010, defendant was convicted of possession of a stolen motor vehicle (PSMV) and was sentenced to three years in prison. In 2009, defendant was convicted of PSMV and was sentenced to probation, which was terminated unsatisfactorily. Defendant was also convicted of misdemeanor street gang contact and reckless conduct in 2014. He admitted being a member of the Black Disciples street gang from ages 12 to 26. Defendant "started seeing a mental health professional in his teenage years and was diagnosed with ADHD, PTSD, and bipolar [disorder]."

¶ 22    In aggravation, the State relied on defendant's criminal background. In mitigation, defendant argued that only one of his prior convictions, vehicular hijacking, was a violent offense. Defendant also highlighted that he had "family support" and was "in contact with *** The Cease Fire Program." In allocution, defendant stated that he was attempting to rehabilitate himself while in custody and his mother had passed away during that time.

¶ 23    The trial court sentenced defendant to 15 years in prison. The court noted that defendant "ha[d] been to the penitentiary before for violent crimes in particular and having guns previously." Defendant filed a motion to reconsider his sentence, which the trial court denied.

¶ 24    Defendant timely appealed.

¶ 25                                   II. ANALYSIS

¶ 26    On appeal, defendant contends that (1) trial counsel rendered ineffective assistance by failing to file a motion to suppress evidence as the product of his unlawful arrest, (2) his sentence is excessive, and (3) the AHC and UUWF statutes are unconstitutional.

¶ 27                        A. Ineffective Assistance of Trial Counsel

¶ 28    Defendant contends that trial counsel should have filed a motion to suppress evidence based on his unlawful arrest. Defendant claims that his arrest was unlawful because, "[w]hen the police pursued [him], they lacked any information indicating that he did not have the legal right to possess a gun." Defendant argues that counsel should have sought suppression of "his statement to police after his arrest, his identity, and his criminal history," but, as best we can tell, not the firearm itself.

¶ 29    Defendant's brief repeatedly claims that trial counsel should have filed a "motion to quash arrest." The Code of Criminal Procedure of 1963 allows a defendant to file a motion to suppress evidence illegally seized (725 ILCS 5/114-12 (West 2018)) rather than a "motion to quash arrest" (see *People v. Nash*, 2024 IL App (4th) 221078, ¶¶ 113-16). Defendant argues that his arrest was unlawful, but the remedy such a motion would have sought was the suppression of evidence. Therefore, we will refer to the motion that defendant contends trial counsel should have filed as a

motion to suppress evidence, not a "motion to quash arrest." See *People v. Hansen*, 2012 IL App (4th) 110603, ¶¶ 62-63.

¶ 30    To establish ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant must show that (1) counsel's performance was objectively unreasonable and (2) there is a reasonable probability the result of the proceeding would have been different but for counsel's deficient performance, *i.e.*, prejudice. *People v. Patterson*, 2014 IL 115102, ¶ 81. "To establish prejudice when an ineffective assistance claim is based on trial counsel's failure to file a suppression motion, a defendant must demonstrate that the unargued suppression motion was meritorious and that a reasonable probability exists that the trial outcome would have been different had the evidence been suppressed." *People v. Webb*, 2023 IL 128957, ¶ 23. The decision whether to file a motion to suppress is generally a matter of strategy that cannot support a claim of ineffective assistance. *Id.* We review *de novo* whether counsel rendered ineffective assistance. *People v. Yankaway*, 2025 IL 130207, ¶ 59.

¶ 31    To evaluate this claim of ineffective assistance, we must determine whether trial counsel had a basis for challenging the legality of defendant's arrest and, if so, whether such a challenge would have been successful. The question is whether probable cause supported defendant's arrest. Probable cause exists when the facts known to the officer would lead a reasonable person to believe that the defendant committed a crime. *People v. Hopkins*, 235 Ill. 2d 453, 472 (2009). The probable cause analysis is objective, and the arresting officer's subjective intent is irrelevant. *People v. White*, 2021 IL App (1st) 191095, ¶ 23. Whether probable cause exists depends on the totality of the circumstances. *Hopkins*, 235 Ill. 2d at 472. "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in [the officer's] presence, [the

officer] may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); see *People v. Fitzpatrick*, 2013 IL 113449, ¶ 19 (police may make arrests for traffic or petty offenses).

¶ 32    This incident began when Lanning saw defendant and two other individuals walking in the middle of 67th Street, which forced a vehicle to drive around them. The Illinois Vehicle Code provides that "where a sidewalk is provided and its use is practicable, it shall be unlawful for any pedestrian to walk along and upon an adjacent roadway." 625 ILCS 5/11-1007(a) (West 2018). Defendant does not dispute that he was walking in the middle of 67th Street. At trial, circumstantial evidence indicated that sidewalks were available for defendant's use. Body-worn camera videos and photographs of the same block just a few buildings away from the intersection show unobstructed sidewalks. Additionally, using Google Maps, we take judicial notice that the intersection of 67th and Morgan Streets features sidewalks on all sides and has since at least August 2007. See *People v. Stiff*, 391 Ill. App. 3d 494, 504 (2009); see also *People v. Davila*, 2022 IL App (1st) 190882, ¶ 44 n.6. Therefore, the record supports a conclusion that Lanning saw defendant violating section 11-1007(a) of the Vehicle Code. For the same reasons, defendant also violated section 9-60-080(a) of the Chicago Municipal Code, which provides that "[w]here sidewalks are provided it shall be unlawful for a pedestrian to walk along and upon an adjacent roadway." Chicago Municipal Code § 9-60-080(a) (added July 12, 1990). These violations provided probable cause to arrest defendant. Our supreme court and our legislature allow police to make arrests for violations of the Vehicle Code and municipal codes. *Fitzpatrick*, 2013 IL 113449, ¶ 21; see 625 ILCS 5/16-102(a) (West 2018) (authorizing arrests based on violations of the Vehicle Code);

*People v. Grant*, 2013 IL 112734, ¶ 15 (observing a violation of the Chicago Municipal Code provides police with probable cause to arrest).

¶ 33    *In re Joseph T.*, 2023 IL App (1st) 230046-U, is persuasive authority (see Ill. S. Ct. R. 23(e)(1) (eff. June 3, 2025)) and is almost identical to this case. In *Joseph T.*, two police officers saw a group of juveniles, including the defendant, walking in the middle of a street in Englewood, the same neighborhood as in this case. See *Joseph T.*, 2023 IL App (1st) 230046-U, ¶¶ 6, 55. The defendant ignored the officers' orders to get out of the street. *Id.* ¶ 7. When the officers began to exit their police vehicle, the defendant ran away, clutching a fanny pack that appeared to contain a heavy object, which the officers believed was a weapon. *Id.* ¶ 8. The officers pursued the defendant, arrested him in a vacant lot, and recovered a firearm from the fanny pack. *Id.* The defendant filed a motion to suppress. See *id.* ¶ 6. The trial court denied the motion, finding that "the officers had probable cause to arrest [the defendant] because they had witnessed him walking in the middle of the street in violation of the Illinois Vehicle Code *** (625 ILCS 5/11-1007(a) (West 2020)) and a similar municipal ordinance (Chi. Mun. Code 9-60-080(a))." *Id.* ¶ 10. This court affirmed, agreeing that the officers had probable cause to arrest the defendant based on his violation of the Vehicle Code. *Id.* ¶ 54. *Joseph T.* shows that a motion to suppress in this case would have been unsuccessful. Defendant cannot establish ineffective assistance of counsel for not filing a futile motion to suppress. See *People v. Moore*, 2012 IL App (1st) 100857, ¶ 45 ("Defense counsel is not required to make losing motions or objections in order to provide effective legal assistance.").

¶ 34    We recognize that Lanning testified he conducted an "investigatory stop," also known as a *Terry* stop, of defendant for walking in the middle of 67th Street. See *People v. Timmsen*, 2016 IL

118181, ¶ 9 (citing *Terry v. Ohio*, 392 U.S. 1, 22 (1968)). That is, Lanning did not attempt to arrest defendant for violating the Vehicle Code or the Chicago Municipal Code. However, reasonable suspicion supported Lanning's attempt to conduct a *Terry* stop for the reasons set forth above, so the *Terry* stop of defendant was lawful. See *People v. Hackett*, 2012 IL 111781, ¶ 19 (observing a violation of the Vehicle Code provides police with reasonable suspicion). Defendant's flight from that lawful *Terry* stop provided probable cause to arrest him for obstructing a police officer. See *People v. Johnson*, 408 Ill. App. 3d 107, 122 (2010); see also *People v. Eyler*, 2019 IL App (4th) 170064, ¶ 23.

¶ 35     We note that running from police, on its own, does not create reasonable suspicion or probable cause. *People v. Bloxton*, 2020 IL App (1st) 181216, ¶ 21; *People v. Horton*, 2019 IL App (1st) 142019-B, ¶ 67. Additionally, "[a] defendant 'who runs away from an *unlawful Terry* stop is not resisting or obstructing an authorized act of the police officer.' " (Emphasis added.) *Eyler*, 2019 IL App (4th) 170064, ¶ 23 (quoting *People v. Shipp*, 2015 IL App (2d) 130587, ¶ 50). " 'However, such flight does provide police with probable cause to arrest for obstructing a peace officer if, before defendant fled, the officer in question was justified in detaining defendant at the time of the flight.' " *Id.* (quoting *Johnson*, 408 Ill. App. 3d at 122). That is the case here.

¶ 36     The record establishes that the officers had three bases for probable cause to arrest defendant: (1) violation of section 11-1007(a) of the Vehicle Code for walking in the middle of 67th Street when sidewalks were available, (2) violation of section 9-60-080(a) of the Chicago Municipal Code for the same conduct, and (3) fleeing from a lawful *Terry* stop. Under any of these theories, the officers were justified in arresting defendant regardless of what they did or did not know about his possession of a firearm. Therefore, a motion to suppress would not have been

successful. Defendant has not established prejudice, so his ineffective assistance claim fails. See *People v. Griffin*, 178 Ill. 2d 65, 74 (1997) (if an ineffective assistance claim fails because the defendant failed to establish prejudice, we need not consider whether counsel's performance was objectively unreasonable).

¶ 37 Defendant claims that the State has forfeited these theories of probable cause because, "[f]or the first time on appeal, the State now contends that [defendant] was arrested for violating the Illinois Vehicle Code and Chicago Municipal Code." The State did not raise these theories of probable cause in the trial court because defendant did not challenge the legality of his arrest in the trial court. Forfeiture does not apply to the State in this scenario. See *People v. Thompson*, 337 Ill. App. 3d 849, 854 (2003) (the rule that a party forfeits an argument on appeal by not raising it in the trial court applies to the State only when the State appeals the trial court's grant of a motion to suppress); see also *People v. Pinkonsly*, 207 Ill. 2d 555, 563 (2003) (an appellee generally may raise arguments in support of the trial court's judgment even if they were not raised in the trial court so long as those arguments have a sufficient factual basis in the record). The question in this appeal is whether a motion to suppress, *if trial counsel had filed one*, would have been successful. See *Webb*, 2023 IL 128957, ¶ 23. If the record establishes any basis for probable cause to arrest defendant, we can affirm his conviction because the existence of probable cause means that a motion to suppress arguing a *lack* of probable cause would not have been successful. See *People v. Stewart*, 365 Ill. App. 3d 744, 750-51 (2006).

¶ 38 Additionally, finding forfeiture in this scenario would produce unworkable results. If we accepted defendant's forfeiture argument, then, to preserve theories of probable cause to arrest, the State would either have to (1) force every defendant to file a motion to suppress, which the

State cannot do, or (2) charge defendants with every conceivable violation of the Criminal Code of 2012, Vehicle Code, municipal codes, and any other statutes that could support probable cause to arrest. We cannot imagine placing such mandates on the defendant or the State. Therefore, we reject defendant's forfeiture argument.

¶ 39    Defendant also argues that the State did not present any evidence that sidewalks were available for his practicable use, so there is no basis for concluding that he violated the Vehicle Code or Chicago Municipal Code. The State did not present such evidence because it did not charge defendant with violations of either code. But, as explained above, we can infer from the trial evidence and judicial notice that the intersection of 67th and Morgan Streets did have sidewalks that defendant chose not to use; therefore, the officers saw him violating the Vehicle Code and Chicago Municipal Code. This case is not like *People v. Shipp*, 2020 IL App (2d) 190027, ¶¶ 46-47, in which a postconviction petitioner established that police did not have probable cause to arrest him for violating section 11-1007(a) of the Vehicle Code by presenting a video showing that large amounts of plowed snow blocked the entrances to the sidewalks, making use of the sidewalks impracticable. In this case, the body-worn camera videos show that April 19, 2018, was a clear, sunny day, and sidewalks near the intersection of 67th and Morgan Streets were free of snow.

¶ 40    The other cases defendant cites involved scenarios in which the *only* basis for arresting the defendant was his flight from police and suspected possession of a firearm. See, *e.g.*, *Bloxton*, 2020 IL App (1st) 181216, ¶ 20 (officers saw a group of people in the street who might have been drinking alcohol from plastic cups, but the defendant did not have a cup and therefore could not have been drinking alcohol on a public way); *People v. Page*, 2024 IL App (1st) 220830, ¶¶ 7-8

(officer arrested the defendant based solely on seeing the him place an object into his pocket, then throw it into a vehicle and flee). But in this case, the officers had probable cause to arrest defendant before, and independent of whether, they had reason to believe defendant possessed a firearm. Accordingly, we reject defendant's claim of ineffective assistance of counsel due to his failure to establish prejudice under *Strickland* and *Webb*.

¶ 41                              B. Sentence

¶ 42    Defendant contends that his 15-year sentence is excessive because he (1) did not harm anyone during this incident, (2) struggles with mental health issues, (3) has a supportive family, and (4) was a young adult when he committed this offense and the other offenses in his criminal background.

¶ 43    A trial court has broad discretion in sentencing a defendant, and we will not overturn its sentencing decision unless the trial court abuses its discretion. *People v. Colone*, 2024 IL App (1st) 230520, ¶ 134. The trial court must consider all applicable factors in aggravation and mitigation, but we will not reverse its decision merely because we would have weighed those factors differently. *Id.* ¶¶ 134-35.

¶ 44    AHC is a Class X felony (720 ILCS 5/24-1.7(b) (West 2018)), so the sentencing range in this case was 6 to 30 years (see 730 ILCS 5/5-4.5-25(a) (West 2018)). Defendant's 15-year sentence is within the statutory range, so it is not excessive unless it varies greatly from the spirit and purpose of the law or is manifestly disproportionate to the offense. See *Colone*, 2024 IL App (1st) 230520, ¶ 135.

¶ 45    Here, there is no basis for such a conclusion. Defendant possessed a fully loaded firearm on the street in the middle of the day for no apparent reason despite having five prior felony

convictions. In fact, at the time of this offense, defendant was on parole for his 2016 vehicular hijacking conviction. Defendant's criminal background amply supports a significant term of imprisonment. He has been convicted of multiple violent and firearm-related offenses, including vehicular hijacking, robbery, and UUWF. He has spent essentially his entire adult life since 2009 in and out of prison. Defendant's conduct and background demonstrate little rehabilitative potential. His 15-year sentence is appropriate.

¶ 46    Defendant argues that "his conduct did not cause any actual harm." From presiding over defendant's trial, the trial court was aware that no one was physically injured in this case. We presume the trial court considered that information at sentencing (see *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 20), and defendant has presented nothing to rebut that presumption (see *People v. Gordon*, 2016 IL App (1st) 134004, ¶ 51). Although the absence of serious physical harm is a mitigating factor (730 ILCS 5/5-5-3.1(a)(1) (West 2018)), the existence of mitigating factors does not require a minimum sentence (*People v. Harmon*, 2015 IL App (1st) 122345, ¶ 123).

¶ 47    Defendant also contends that his struggles with mental health issues and his supportive family warrant a lesser sentence. The PSI reflected that defendant was diagnosed with attention-deficit/hyperactivity disorder, post-traumatic stress disorder, and bipolar disorder as a teenager and that he maintains contact with his brothers and stepdaughter. At the sentencing hearing, the trial court stated that it had considered the PSI. Just because the trial court did not discuss these matters does not mean the court ignored them. See *People v. Jones-Beard*, 2019 IL App (1st) 162005, ¶ 23 ("[A] sentencing court need not state every factor it considered in determining a defendant's sentence."). We will not reweigh these factors. See *Colone*, 2024 IL App (1st) 230520, ¶¶ 134-35.

¶ 48    Finally, defendant argues that he was 26 years old at the time of this offense and was an "emerging adult between the ages of 18 and 23 when he committed the offenses making up his criminal history." Defendant seeks the protections of *Miller v. Alabama*, 567 U.S. 460 (2012), and related authority. However, *Miller* applies to juvenile defendants who receive life sentences. *People v. Reyes*, 2016 IL 119271, ¶ 9. Defendant is not a juvenile; he was 26 years old at the time of this offense. In Illinois, 21 is the age of adulthood for sentencing purposes. *People v. Williams*, 2021 IL App (1st) 190535, ¶ 34; 730 ILCS 5/5-4.5-115(b) (West 2020); see *People v. Montanez*, 2022 IL App (1st) 191930, ¶ 58. Furthermore, defendant did not receive an actual or *de facto* life sentence; he received a 15-year sentence. See *People v. Buffer*, 2019 IL 122327, ¶¶ 41-42 (any sentence exceeding 40 years is a *de facto* life sentence). Therefore, *Miller* does not apply to defendant, and we affirm his 15-year sentence.

¶ 49                    C. Constitutionality of AHC and UUWF Statutes

¶ 50    Defendant contends that Illinois's AHC and UUWF statutes are unconstitutional because both statutes prohibit felons, including felons with convictions for nonviolent offenses, from possessing firearms.

¶ 51    Defendant raises facial and as-applied constitutional challenges to both the AHC and UUWF statutes. These should be four different arguments, but defendant essentially makes one overarching argument that Illinois criminal statutes prohibiting felons from possessing firearms are unconstitutional under *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022).

¶ 52                                1. *Forfeiture*

¶ 53    To the extent defendant does differentiate between his as-applied and facial challenges to the AHC and UUWF statutes, the State argues he has forfeited his as-applied challenges because

he did not raise them in his posttrial motions. A defendant may forfeit an as-applied constitutional challenge by raising it for the first time on appeal because "an as-applied constitutional challenge is dependent on the particular circumstances and facts of the individual defendant." *People v. Thompson*, 2015 IL 118151, ¶ 37. "Therefore, it is paramount that the record be sufficiently developed in terms of those facts and circumstances for purposes of appellate review." *Id.*

¶ 54　　In this case, the record is sufficiently developed for us to evaluate defendant's as-applied challenge to the AHC statute because that charge went to trial. And, although we know nothing about the facts of defendant's UUWF conviction, that does not preclude review of his as-applied challenge to that statute. The circumstances of that conviction are immaterial to the constitutional analysis because "all that matters is that [defendant] is a felon—a fact already shown in the trial court" by stipulation. See *People v. Lopez*, 2025 IL App (1st) 232120, ¶ 27. Defendant's claim is that Illinois law cannot prohibit him, or anyone, from possessing a firearm based solely on their status as a felon. *Why* defendant is a felon is irrelevant; what matters is *that* he is a felon. As we will explain below, the distinction between violent and nonviolent felons is immaterial to the *Bruen* analysis (*id.* ¶ 26), so whether defendant's UUWF conviction was violent or nonviolent does not matter. Therefore, we will review all of defendant's constitutional challenges.

¶ 55　　　　　　　　　　　2. Constitutionality Under *Bruen*

¶ 56　　The AHC and UUWF statutes both ban felons, including felons with convictions for nonviolent offenses, from possessing firearms, so our constitutional analysis for both statutes will be the same. See *People v. Grace*, 2025 IL App (1st) 232429-U, ¶ 10.

¶ 57　　We presume statutes to be constitutional. *People v. Legoo*, 2020 IL 124965, ¶ 29. "To overcome this presumption, the party challenging the statute must clearly establish that it violates

the constitution." *People v. Sharpe*, 216 Ill. 2d 481, 487 (2005). We must construe statutes in a manner that upholds their validity and constitutionality if we reasonably can. *People v. Graves*, 207 Ill. 2d 478, 482 (2003). A facial challenge requires establishing that the statute is unconstitutional under any set of facts, *i.e.*, there are no circumstances in which the statute could be validly applied. See *People v. Thompson*, 2025 IL 129965, ¶ 14; *People v. Rizzo*, 2016 IL 118599, ¶ 24; *People v. Davis*, 2014 IL 115595, ¶ 25. "[A]n as-applied challenge requires a showing that the statute is unconstitutional as it applies to the specific facts and circumstances of the challenging party." *People v. Harris*, 2018 IL 121932, ¶ 38. We review the constitutionality of any statute *de novo*. *Allegis Realty Investors v. Novak*, 223 Ill. 2d 318, 334 (2006).

¶ 58    The AHC statute, at the time, provided that

"A person commits the offense of being an armed habitual criminal if he or she receives, sells, possesses, or transfers any firearm after having been convicted a total of 2 or more times of any combination of the following offenses:

(1) a forcible felony as defined in Section 2-8 of this Code;

(2) unlawful possession of a weapon by a felon; aggravated unlawful use of a weapon; aggravated discharge of a firearm; vehicular hijacking; aggravated vehicular hijacking; aggravated battery of a child as described in Section 12-4.3 or subdivision (b)(1) of Section 12-3.05; intimidation; aggravated intimidation; gunrunning; home invasion; or aggravated battery with a firearm as described in Section 12-4.2 or subdivision (e)(1), (e)(2), (e)(3), or (e)(4) of Section 12-3.05; or

> (3) any violation of the Illinois Controlled Substances Act or the Cannabis Control Act that is punishable as a Class 3 felony or higher." 720 ILCS 5/24-1.7(a) (West 2018).

The UUWF statute provided, in relevant part, that

> "It is unlawful for a person to knowingly possess on or about his person or on his land or in his own abode or fixed place of business any weapon prohibited under Section 24-1 of this Act or any firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction." 720 ILCS 5/24-1.1(a) (West 2010).

¶ 59 Defendant contends that both statutes are unconstitutional under *Bruen*. In *Bruen*, the United States Supreme Court announced a two-step test for determining whether a firearm regulation is constitutional. First, a court must decide whether "the Second Amendment's plain text covers an individual's conduct." *Bruen*, 597 U.S. at 17. If it does not, then the statute at issue does not violate the second amendment. See *id.* at 18. However, if the second amendment's plain text does cover the regulated conduct, then the government must establish that the statute "is consistent with this Nation's historical tradition of firearm regulation" because "the Constitution presumptively protects that conduct." *Id.* at 17.

¶ 60 The UUWF statute prohibits an individual who has been convicted of any felony from possessing a firearm (720 ILCS 5/24-1.1(a) (West 2010), and the AHC statute prohibits an individual who has been convicted of two or more enumerated felonies from possessing a firearm (720 ILCS 5/24-1.7(a) (West 2018)). So, with respect to both statutes, the conduct at issue is possessing a firearm after having been convicted of a felony.

¶ 61 We next consider whether this conduct falls under the "plain text" of the second amendment. *Bruen*, 597 U.S. at 17. The plain text of the second amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. However, *Bruen* states that "the Second and Fourteenth Amendments protect the right of an ordinary, *law-abiding* citizen to possess a handgun in the home for self-defense" and "a similar right to carry handguns publicly for their self-defense." (Emphasis added.) *Bruen*, 597 U.S. at 8-10. "The Second Amendment *** 'surely elevates above all other interests the right of *law-abiding*, responsible citizens to use arms' for self-defense." (Emphasis added.) *Id.* at 26 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008)). The Supreme Court recently explained that laws prohibiting felons from possessing firearms are " 'presumptively lawful.' " *United States v. Rahimi*, 602 U.S. 680, 699 (2024) (quoting *Heller*, 554 U.S. at 627 n.26).

¶ 62 Many Illinois courts agree, as do we, that the "law-abiding" limitation on the second amendment's scope applies to *Bruen*'s "plain text" test.[1] See, *e.g.*, *People v. Baker*, 2023 IL App (1st) 220328, ¶ 37 (explaining that *Bruen* "could not have been more clear that its newly announced test applied only to laws that attempted to regulate the gun possession of law-abiding citizens, and not felons like defendant" (internal quotation marks omitted)); see also *People v. Gray*, 2025 IL App (1st) 191086-B, ¶ 20 (the second amendment protects only to "law-abiding citizens" (internal quotation marks omitted)); *People v. Burns*, 2024 IL App (4th) 230428, ¶ 21 (the second and fourteenth amendments protect the right of "law-abiding citizens" to possess

---

[1]Defendant claims that, "[f]ollowing [the *Bruen*] decision in the Supreme Court, the Illinois Supreme Court later held that a portion of the aggravated unlawful use of a weapon statute which prohibited possession of handgun outside the home was unconstitutional," citing *People v. Aguilar*, 2013 IL 112116, ¶¶ 20-22. This timeline is incorrect. *Aguilar* predated *Bruen* by nine years.

firearms (internal quotation marks omitted)). But see *People v. Brooks*, 2023 IL App (1st) 200435, ¶ 89 (a defendant's status as a felon is irrelevant to the first step of the *Bruen* test).

¶ 63    So, the question is whether possessing a firearm while having a felony conviction falls within the scope of the second amendment, which protects the right of "law-abiding citizens" to possess firearms. The answer to that question is no. See *Burns*, 2024 IL App (4th) 230428, ¶ 21. Therefore, defendant's constitutional challenges fail at the first step of the *Bruen* test.

¶ 64    In two recent decisions, this court rejected the same constitutional arguments that defendant raises in this case. In *Grace*, the defendant filed a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2024)), arguing that his convictions for AHC and UUWF were unconstitutional facially and as applied to him because his predicate felony drug conviction was nonviolent and "there is no historical traditional of permanently disarming felons." *Grace*, 2025 IL App (1st) 232429-U, ¶¶ 2-4. The trial court denied the petition, and we affirmed. *Id.* ¶¶ 5, 29. We explained that constitutional challenges to the AHC and UUWF statutes have failed (1) at the first step of the *Bruen* test because the second amendment does not protect felons' right to possess firearms and (2) at the second step of the *Bruen* test because, even if the statutes regulate only possession of firearms rather than the circumstances surrounding possession, there is a historical tradition of disarming felons. *Id.* ¶¶ 14-16. We also noted that "neither the UUWF nor the AHC statutes impose a permanent ban on felon firearm possession" because "[a] convicted felon may lawfully possess a firearm if he or she 'has been granted relief by the Director of the Illinois State Police under Section 10 of the Firearm Owners Identification Card Act.' " *Id.* ¶ 18 (quoting 720 ILCS 5/24-1.1(a) (West 2024)).

¶ 65     In *Lopez*, a jury found the defendant guilty of AHC and UUWF. *Lopez*, 2025 IL App (1st) 232120, ¶ 1. On appeal, the defendant argued that, under *Bruen*, the AHC statute was unconstitutional facially and as applied to him, and the UUWF statute was facially unconstitutional. *Id.* We found that defendant's facial challenge to the AHC statute failed at the first step of the *Bruen* test because "the second amendment only protects the right of law-abiding citizens to bear arms." *Id.* ¶ 22. We also rejected the defendant's as-applied challenge premised on his claim that "he [was] a nonviolent felon" because "the distinction between being a violent felon and nonviolent felon for purposes of *Bruen* and the second amendment" "is insignificant." *Id.* ¶¶ 26-27. Finally, we concluded that the UUWF statute is constitutional "because the second amendment only protects the right of law-abiding citizens to bear arms." *Id.* ¶ 32.

¶ 66     *Grace* and *Lopez* addressed and rejected the same arguments defendant raises in this case: namely, that (1) the second amendment protects felons' right to possess firearms, (2) there is no historical tradition of regulating felons' possession of firearms, and (3) even if the government can regulate violent or dangerous felons' possession of firearms, that does not apply to felons whose "criminal history is non-violent." We see no reason to depart from *Grace* and *Lopez*, which are based on the extensive body of Illinois caselaw upholding the AHC and UUWF statutes as constitutional, both facially and as applied to nonviolent felons. See, *e.g.*, *Gray*, 2025 IL App (1st) 191086-B, ¶¶ 20, 23 (rejecting facial and as-applied challenges to AHC statute); *People v. Daniels*, 2025 IL App (1st) 230823, ¶¶ 36, 39 (rejecting challenge to "AHC statute as applied to individuals with prior nonviolent gun possession convictions"); *People v. Boss*, 2025 IL App (1st) 221855, ¶ 35 (rejecting facial challenge to UUWF statute); *People v. Kelley*, 2024 IL App (1st) 230569, ¶¶ 16-22 (rejecting facial challenge to AHC statute); *People v. Travis*, 2024 IL App (3d) 230113,

¶¶ 33, 37 (rejecting facial and as-applied challenges to AHC and UUWF statutes); *Baker*, 2023 IL App (1st) 220328, ¶ 37 (rejecting as-applied to challenge to UUWF statute); *People v. Mobley*, 2023 IL App (1st) 221264, ¶ 35 (rejecting as-applied challenge to UUWF statute).

¶ 67    Defendant also contends that the AHC and UUWF statutes violate the Illinois Constitution because "the Illinois Constitution provides even greater protections for 'individual citizens' than what is provided to 'the People' in the Second Amendment." Illinois courts have consistently rejected this argument, and we reach the same conclusion. See, *e.g.*, *Kelley*, 2024 IL App (1st) 230569, ¶ 26 ("the state's police power includes the ability to control who may bear arms"); *Burns*, 2024 IL App (4th) 230428, ¶ 28 (the UUWF statute is a proper exercise of the state's police power); *Travis*, 2024 IL App (3d) 230113, ¶¶ 42-43 (the "AHC and UUWF statutes are a proper exercise of the state's police power, which allows the state to exert, through legislation, control over the dangers posed by firearms and the people who might use them to do harm").

¶ 68    Finally, characterizing defendant as a "non-violent" felon is a stretch. Although we do not know the facts of defendant's prior convictions, he has been convicted of vehicular hijacking and robbery, both of which require the use of force or threatening the imminent use of force. See 720 ILCS 5/18-1, 18-3 (West 2014). Accordingly, we affirm defendant's AHC conviction over his constitutional challenges.

¶ 69                                III. CONCLUSION

¶ 70    For the foregoing reasons, we affirm defendant's AHC conviction and 15-year sentence.

¶ 71    Affirmed.

---

***People v. Rich*, 2025 IL App (1st) 230818**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-CR-06672; the Hon. James B. Linn, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Ann B. McLennan, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Eileen O'Neill Burke, State's Attorney, of Chicago (John E. Nowak, Erin K. Slattery, and Brian K. Hodes, Assistant State's Attorneys, of counsel), for the People. |

---