2025 IL App (1st) 231590-U

No. 1-23-1590

First Division
July 28, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 10 CR 11998 |
| JOVAN COOPER, | ) ) | Honorable James B. Linn, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1　*Held*:　Postconviction counsel's failure to supplement defendant's postconviction petition where the sought-after witnesses were unavailable did not constitute unreasonable assistance.

¶ 2　Following a jury trial, defendant-appellant Jovan Cooper was found guilty of first degree murder and sentenced to 40 years' imprisonment. In 2019, defendant filed a *pro se* postconviction petition pursuant to the Post-Conviction Hearing Act ("Act") (725 ILCS 5/122-1 *et seq.* (West 2018)) arguing, *inter alia*, that trial counsel was ineffective for failing to call his codefendants to

testify at his trial to support his alibi defense. Defendant now appeals from the circuit court's August 22, 2023, judgment dismissing his postconviction petition at the second stage, arguing that he was deprived of reasonable assistance of postconviction counsel where counsel failed to supplement his petition with supporting documentation. For the reasons that follow, we affirm.

¶ 3                                                    I. BACKGROUND

¶ 4     Defendant, along with Devantae Bolden, and Dairion Holmes were charged with the 2010 stabbing death of Andreus Clark. Defendant was tried by a jury, found guilty of first degree murder, and sentenced to a 40-year prison term. His codefendants were tried separately on a theory of accountability and found not guilty.

¶ 5     Prior to defendant's trial, defense counsel requested a behavioral clinical examination to determine defendant's fitness. Subsequently, defendant was found fit to stand trial and sane at the time of the offense.

¶ 6     At defendant's jury trial, which took place on January 24 and 25, 2012, the following evidence was presented.

¶ 7     Kenneth Rymes testified as follows. On February 4, 2010, he was working at the South Shore Pantry, a convenience store located at 2160 East 71st Street in Chicago, in which there was a butcher counter. Around 4 p.m., two men were fighting in front of the store, one of whom Rymes recognized as defendant. The man who Rymes did not recognize hit defendant in the face and ran away. Defendant, who had a gash above his eye, asked if he could rinse off his face and did so behind the butcher counter at the sink. Defendant then ran out of the store in the same direction in which the other man had run. On March 29, 2010, Rymes met with police and identified defendant from a photo lineup. Rymes also testified that he viewed the video from the currency exchange

and identified defendant. Additionally, he viewed a photo of a knife and testified that it could have been the same as the knives used at the butcher counter.

¶ 8    On cross-examination, Rymes testified that he did not see a knife in defendant's hands as he left the store and he did not notice if a knife was missing from the butcher counter.

¶ 9    Stacy Morris, Silvia Allen, and Ashley Tate, who were employees of the currency exchange and working on the day of the incident, testified to the following. Around 4 p.m. on February 4, 2010, Clark ran into the currency exchange, being chased by a second man. Clark exclaimed "He's going to stab me." Two more men entered, later identified as Bolden and Holmes, and, along with the second man, cornered Clark. The three men began hitting Clark, and the second man, who was observed holding a knife, stabbed Clark. None of the other men were seen with a knife at any point. Clark fell to the ground and the other three men ran out of the building. During this altercation, a panic button was pressed to call the police to the location. Later, a surveillance video from the currency exchange was recovered, which was shown during the trial.[1] All three women testified that the video accurately portrayed the events of that day.

¶ 10    Chicago police detective Brian Forberg, who was assigned to the investigation of Clark's murder, testified as follows. He and his partner arrived at the currency exchange shortly after the stabbing. A knife found in a parking lot next to the currency exchange building was later confirmed to have been the murder weapon. Detective Forberg later learned that Bolden and Holmes, who was also injured and taken to the hospital, were potential offenders and had been arrested. Detective Forberg also learned of a third potential offender, whose first name was Jovan. Detective Forberg located an individual named Jovan Webb and brought him to the police station on

---

[1]This exhibit was not included in the record on appeal.

February 5, 2010. During a physical lineup that day, Stacy identified that individual as one of the perpetrators. However, that individual was later discovered to have been in the Cook County Jail at the time of the stabbing, and, thus, was eliminated as a suspect. Through continued investigation, Detective Forberg learned about defendant, who he identified in court. Defendant's photograph, from the police database, was included in a photo array, from which Rymes identified defendant as the man who was fighting outside of the South Shore Pantry on the day of the incident. Detective Forberg testified that none of the women from the currency exchange identified defendant from the photo array.

¶ 11 Defendant was located and taken into custody on June 7, 2010. When defendant was arrested, a black jacket was recovered from his person, which Detective Forberg testified had a design on the back that matched the one worn by the perpetrator in the currency exchange surveillance video.

¶ 12 An assistant medical examiner testified that Clark sustained multiple stab wounds and his death was caused by a stab wound to the chest. The parties stipulated that an Illinois State Police fingerprint analyst would testify that no fingerprints suitable for comparison were found on the knife.

¶ 13 Defendant filed a motion for a directed finding, which the trial court denied. After closing arguments, the jury found defendant guilty of first degree murder. Defendant filed a motion for a new trial, and following a hearing, the trial court denied that motion.

¶ 14 Prior to sentencing, defense counsel requested that Forensic Clinical Services doctors examine defendant for fitness, as he had been receiving treatment for schizophrenia in the jail's psychiatric unit. A fitness hearing was held on August 31, 2012. After reviewing additional evaluations and hearing testimony from two Forensic Clinical Services staff psychiatrists and four

of defendant's treating psychiatrists, the court found defendant fit for sentencing. Following a sentencing hearing, the court sentenced defendant to 40 years' imprisonment.

¶ 15    On direct appeal, defendant argued that he received an excessive sentence. On May 21, 2015, this court affirmed defendant's sentence. *People v. Cooper*, 2015 IL App (1st) 130884-U.

¶ 16    On July 17, 2019, defendant filed a *pro se* postconviction petition, wherein he (1) challenged trial counsel's failure to call his codefendants to testify at trial asserting that they could have corroborated his alibi defense, (2) challenged the evidence presented at trial which he claimed actually demonstrated his innocence, and (3) requested that his sentence be reduced. No affidavits from the codefendants were attached to the petition. On February 28, 2020, the court dismissed the petition at the first stage, and defendant appealed to this court. On December 7, 2021, defendant's appellate counsel filed an agreed motion for summary disposition, which stated that the dismissal was untimely. On December 8, 2021, this court granted the parties' agreed motion and remanded the petition for second-stage postconviction proceedings. *People v. Cooper*, No. 1-20-0701 (Dec. 8, 2021).

¶ 17    On December 7, 2022, postconviction counsel informed the court that he had reviewed the record, located a witness, and was attempting to locate another witness. On May 3, 2023, postconviction counsel filed his Illinois Supreme Court Rule 651(c) certificate, which stated the following:

> "1. I have consulted with the petitioner, Jovan Cooper, by letter to ascertain his contentions of a deprivation of his constitutional rights and conducted an investigation into those claims.
>
> 2. I have examined the record of the proceedings at Petitioner's trial and sentencing ***.

3. I have examined Petitioner's *pro se* Petitions for Post-Conviction Relief. I have conducted an investigation into claims that two alibi witnesses could provide evidence of actual innocence on behalf of Mr. Cooper. I have been unable to make any amendments to Petitioner's *pro se* pleadings based on this investigation. As the rest of Mr. Cooper's petition adequately states his deprivations of his constitutional rights at trial and on appeal, I have made no amendments to Mr. Cooper's petition."

¶ 18     On May 30, 2023, the State filed a motion to dismiss, arguing that defendant did not make a substantial showing of ineffective assistance of trial counsel, he did not set forth an actual innocence claim where his claims were not based on new evidence, and his sentencing claim was barred by *res judicata*.

¶ 19     On August 22, 2023, at a hearing before the court, postconviction counsel informed the court that the petition claimed that defendant's trial counsel was ineffective for failing to call the codefendants as witnesses at defendant's trial where those witnesses "would have testified [that defendant] was not with them at the time of the murder." Counsel also explained to the court that defendant was found guilty and his codefendants were found not guilty; however, one of the codefendants was deceased and the other could not be located. As such, no affidavits from those potential alibi witnesses could be attached to the petition. Counsel concluded that he was standing on defendant's petition. The court granted the State's motion to dismiss defendant's postconviction petition, stating that there was video evidence of defendant in this case and "[w]ithout any affidavits to support his claim as to what these people might say, I don't see how I can find to give him [an evidentiary] hearing."

¶ 20     This appeal followed.

¶ 21                                II. ANALYSIS

¶ 22 On appeal, defendant argues that he was deprived of reasonable assistance of postconviction counsel where counsel failed to supplement his petition with supporting documentation. He requests that we remand for second stage proceedings.

¶ 23 The Act provides a method for a criminal defendant to collaterally attack a conviction by asserting that it resulted from a substantial denial of his constitutional rights. 725 ILCS 5/122-1 (West 2022); *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). "The purpose of [a postconviction] proceeding is to allow inquiry into constitutional issues relating to the conviction or sentence that were not, and could not have been, determined on direct appeal." *People v. Barrow*, 195 Ill. 2d 506, 519 (2001). A postconviction proceeding in a noncapital case has three stages. *Hodges*, 234 Ill. 2d at 10. At the first stage, the circuit court must independently review the petition within 90 days of its filing and shall dismiss the petition if it determines that the petition is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2). If the petition is not dismissed, it will proceed to the second stage and the court may appoint counsel to represent an indigent defendant, who may then supplement or amend the petition. *People v. Bailey*, 2017 IL 121450, ¶ 18; 725 ILCS 5/122-4. The State then may either move to dismiss the petition or file an answer to the petitioner's claims. 725 ILCS 5/122-5. Where a motion to dismiss is filed, the circuit court must determine if "the petition and accompanying documents make a substantial showing of a constitutional violation." *People v. Agee*, 2023 IL 128413, ¶ 37.

¶ 24 Defendant has not challenged the second stage dismissal of his postconviction petition on the merits in this appeal. Therefore, he has forfeited any arguments that his constitutional claims were meritorious. See *People v. Cotto*, 2016 IL 119006, ¶ 46; Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited ***[.]"). Defendant solely challenges the assistance of his postconviction counsel, and we confine our analysis to that single claim.

¶ 25    In postconviction proceedings, there is no constitutional right to counsel. *People v. Addison*, 2023 IL 127119, ¶ 19. Instead, the right to counsel is derived from the Act (725 ILCS 5/122-4) and governed by our supreme court rules (Ill. S. Ct. R. 651(c) (eff. July 1, 2017)). The Act mandates that a petitioner is entitled to reasonable assistance of counsel, which is "a standard that is significantly lower than the one mandated at trial by our state and federal constitutions." *People v. Custer*, 2019 IL 123339, ¶ 30. To protect this statutory right of counsel, Rule 651(c) delineates specific duties that postconviction counsel must undertake during the proceedings. *People v. Huff*, 2024 IL 128492, ¶ 22. Specifically, Rule 651(c) requires the following:

> "The record *** shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney has consulted with the petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

However, "[a]mendments that would 'only further a frivolous or patently nonmeritorious claim *** are not necessary' under Rule 651(c)." (Internal quotation marks omitted.) *Huff*, 2024 IL 128492, ¶ 22 (quoting *People v. Greer*, 212 Ill. 2d at 205). "Counsel's certification that he or she complied with Rule 651(c) duties creates a rebuttable presumption that counsel provided the petitioner with a reasonable level of assistance, absent an affirmative showing in the record." *People v. Urzua*, 2023 IL 127789, ¶ 54. We review whether counsel substantially complied with Rule 651(c) *de novo*. *People v. Bass*, 2018 IL App (1st) 152650, ¶ 13.

¶ 26    Here, defendant's postconviction counsel properly filed a Rule 651(c) certificate. The certificate provided that he communicated with defendant through letters, reviewed the record,

investigated defendant's claim of ineffective assistance of trial counsel, and was unable to make any amendments to defendant's *pro se* petition. Although defendant asserts that counsel should have communicated with him via other means due to his schizophrenia diagnosis, he cites no appropriate authority for support. We, therefore, cannot say that counsel's communication did not satisfy the rule, especially where defendant had been found mentally fit on multiple occasions. See *People v. Collins*, 2021 IL App (1st) 170597, ¶ 49 (where the record showed that counsel engaged in communication with the petitioner and, although not the communication the petitioner wanted, the contact was sufficient to satisfy Rule 651(c)). Ultimately, because the certificate, on its face, is in conformity with the rule, we reject defendant's argument regarding the manner of counsel's communication as a basis to rebut the presumption of reasonable assistance. See *Addison*, 2023 IL 127119, ¶ 21.

¶ 27 The question before this court then is whether anything in the record otherwise rebuts this presumption and shows that postconviction counsel did not substantially comply with Rule 651(c). See *People v. Perkins*, 229 Ill. 2d 34, 52 (2007) (an attorney's Rule 651(c) certificate is not conclusive of compliance and can be rebutted). Defendant attempts to rebut the presumption by arguing that, even though counsel was unable to obtain affidavits from his codefendants, counsel should have contacted defendant's trial counsel, attached an affidavit from defendant, or included transcripts from the codefendants' trial to substantiate his claim. We note that defendant does not make any arguments on appeal regarding counsel's assistance as related to his postconviction claims of actual innocence and excessive sentence. We thus deem those issues forfeited and do not address them.

¶ 28 Section 122-2 of the Act requires that a postconviction petition must "clearly set forth the respects in which petitioner's constitutional rights were violated" and "shall have attached thereto

affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122-2 (West 2022). "Nonfactual and nonspecific assertions which merely amount to conclusions are not sufficient to require a hearing under the Act." *People v. Coleman*, 183 Ill. 2d 366, 381 (1998). Thus, postconviction counsel's responsibility to present the petitioner's claims in an appropriate legal form requires counsel to attempt to "obtain evidentiary support for claims raised in the post-conviction petition." *People v. Johnson*, 154 Ill. 2d 227, 245 (1993); see *People v. Delton*, 227 Ill. 2d 247, 255 (2008) (failure to attach evidentiary support or explain its absence is fatal to a postconviction petition). Counsel's assistance would be unreasonable where no effort was made to obtain affidavits or other documents from known sources to support the claims in the petition. *Johnson*, 154 Ill. 2d at 247.

¶ 29      The crux of defendant's claim of ineffective assistance of trial counsel is that he was not present in the currency exchange on the day of the stabbing, his codefendants could have testified that he was not with them that day, and trial counsel was ineffective for failing to call them as witnesses at his trial to provide such testimony. The record here affirmatively shows that postconviction counsel made the requisite effort where he specifically stated to the circuit court that he had attempted to locate the two alleged alibi witnesses, *i.e.* the codefendants, but one was deceased and the other could not be found. Based on these assertions, we find that counsel discharged his duties to seek out evidentiary support for defendant's claim of ineffective assistance of trial counsel. Additionally, because he explained the absence of supporting documentation to the court, counsel did not run afoul of the principle that proper presentation of a petitioner's claims includes overcoming procedural bars. See *Perkins*, 229 Ill. 2d at 44. As such, defendant has failed to overcome the presumption that postconviction counsel provided reasonable assistance.

¶ 30   Nonetheless, defendant claims that postconviction counsel should have obtained and included in his petition transcripts from the codefendants' trial and affidavits from himself and trial counsel to support his claim of ineffective assistance of trial counsel. However, defendant's arguments rest on the conclusory assumption that counsel did not consider such avenues and that efforts to include these additional materials would have yielded evidence supportive of his claim. Postconviction counsel is not required to comprehensively recount his efforts in the certificate. *People v. Jones*, 2011 IL App (1st) 092529, ¶ 24. Moreover, as stated above, the presumption afforded counsel upon the filing of a facially valid Rule 651(c) certificate is that counsel reviewed the record, investigated the petitioner's claim, and sought out evidence to support that claim. The fact that counsel determined that there were no amendments necessary does not mean that he failed to consider whether other affidavits or transcripts from the codefendants' trial would have been helpful. Rather, it is entirely plausible that counsel considered these avenues but found that they would have yielded information either unsupportive or even harmful to defendant's claim. See *People v. Luna*, 2022 IL App (1st) 200203-U, ¶ 29 ("Postconviction counsel does not have a duty to make amendments that torpedo [the] defendant's claim."); *Bass*, 2018 IL App (1st) 152650, ¶ 14 (noting that the petitioner's argument presumes that "counsel's failure to amend his petition was the result of some deficiency in his lawyer's performance rather than an inability to substantiate [the petitioner's] claims").

¶ 31   Our supreme court recently provided similar reasoning in *People v. Williams*, 2025 IL 129718. There, the petitioner alleged in his postconviction petition that trial counsel was ineffective. *Id.* ¶ 1. The circuit court dismissed the petition at the second stage. *Id.* On appeal, the petitioner argued that his postconviction counsel failed to provide reasonable assistance. *Id.* The Fifth District of this court reversed the dismissal, finding that counsel's performance was

objectively unreasonable. *Id.* ¶ 35. Specifically, the reviewing court reasoned that because the petitioner pled guilty, postconviction counsel was required to support the petitioner's claim of ineffective assistance of trial counsel "with an assertion of innocence or the articulation of a plausible defense," and because postconviction counsel failed to amend the petition with such factual allegations, the appellate court concluded that counsel provided unreasonable assistance. *Id.* ¶ 45. Our supreme court disagreed and held that the appellate court "incorrectly assumed that there were additional facts and allegations that counsel could have included in the petition" and there was "nothing in the record to demonstrate [the petitioner] had a viable defense[.]" *Id.* ¶ 46. In coming to this conclusion, the court also stated that "[p]ostconviction counsel did not perform unreasonably in this case simply *** because he was unable to make the petition's allegations factually sufficient to require the granting of relief" (citations omitted) and "counsel cannot be said to have rendered an unreasonable level of assistance even if the arguments lacked merit, were not particularly compelling, and were ultimately unsuccessful." *Id.* ¶ 49.

¶ 32    Following the court's reasoning in *Williams*, we decline to assume that there were any additional facts that should have been included in the petition. The record does not support such a conclusion, and the mere fact that defendant's claim of ineffective assistance of trial counsel was ultimately unsuccessful does not persuade us otherwise.

¶ 33    Given defendant's alibi claim, we can agree that the best evidentiary support for his claim of ineffective assistance of counsel would have been testimony from his codefendants. However, postconviction counsel, despite his efforts, was unable to obtain such affidavits. We note that the supplemental documentation defendant claims would have also substantiated his claim were not necessary to render counsel's provision of assistance reasonable in this case. Here, portions of the trial transcript were already included in defendant's petition. Furthermore, affidavits from

defendant and trial counsel are not required for a postconviction petition. See *People v. Hunt*, 2023 IL App (2d) 220153, ¶ 28 (finding that the failure to attach the defendant's own affidavit or trial counsel's affidavit attesting to his own ineffectiveness does not constitute unreasonable assistance of counsel). In sum, we find that postconviction counsel's decision to rest on defendant's *pro se* petition without any amendments was not unreasonable, and the court's second stage dismissal of defendant's postconviction petition is affirmed.

¶ 34 On a final note, defendant argues that counsel should have corrected the court when it inaccurately stated that his codefendants were found guilty. In fact they were found not guilty, which was defendant's reason for claiming that they would have provided an alibi defense. Counsel's failure to correct the trial court's inaccurate statement may have been error but does not require this court to remand this case. This is particularly true where the record shows that counsel expressly stated, prior to the court's misstatement, that the codefendants were found not guilty. Counsel provided accurate information to the trial court, and it is unlikely that the court's decision would have been different had counsel corrected the court.

¶ 35                                    III. CONCLUSION

¶ 36 For the reasons stated, we affirm the judgment of the circuit court.

¶ 37 Affirmed.